UNITED STATES DISTRICT COURT     FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

MEMORANDUM & ORDER
12-CV-5057

B.N., an infant, By his father and natural
guardian RICKY NOVICK and RICKY
NOVICK individually,

                       Plaintiffs,
     -versus-

BNEI LEVI, INC., AVI BENSOUSSAN, and
J.E.,

                       Defendants.

APPEARANCES

       By:    Marc E. Freund
               Lipsig, Shapey, Manus & Moverman, PC
               40 Fulton Street
               New York, NY 10038
               *Attorney for Plaintiffs*

       By:    Rodney E. Gould
               Rubin Hay & Gould
               205 Newbury St
               Framingham, MA 01701
               *Attorney for Defendants*

JOHN GLEESON, United States District Judge:

        The plaintiffs have moved for an order pursuant to 28 U.S.C. § 1447 remanding the case back to the Supreme Court of the State of New York, County of Kings.  For the reasons that follow, I grant the motion to remand but deny plaintiffs' motion for attorney's fees.

A.     *Facts and Procedural History*

        On August 28, 2012, Ricky Novick, as father and natural guardian of 11-year old B.N. ("plaintiffs"), filed a complaint in New York state court alleging two causes of action, one to recover damages for personal injuries sustained by B.N. at a summer camp, and the other to recover for loss of services and medical expenses.  Specifically, the complaint alleges that, on

July 26, 2012, the defendants created a dangerous and hazardous condition by leaving go-karts unattended on the camp grounds and negligently failing to supervise B.N., thereby causing him to sustain serious injuries.  *See* Pls.' Ex. A ¶¶ 47-59, ECF No. 14.

The complaint names three defendants – (1) Bnei Levi, Inc., a non-profit organization registered in New Jersey, alleged to own and manage the camp; (2) Avi Bensoussan ("Bensoussan"), a citizen of New Jersey, alleged to be an owner and director of the camp; and (3), J.E., a citizen of New York, alleged to be a counselor hired to supervise the safety of minor children attending the camp.  *Id.* ¶¶ 1, 19-24, 31.

On October 9, 2012, the removing defendants Bnei Levi and Bensoussan ("defendants")[1] filed a timely Notice of Removal alleging that defendant J.E. had been "fraudulently joined" solely to defeat defendants' right to remove the case to federal court.[2]  In their removal petition, defendants make a series of assertions suggesting that J.E. is unconnected to the controversy.  Specifically, they allege that J.E. is a 15-year old minor who was employed as a "counselor in training" ("CIT") at the time of the incident and that CITs "are not tasked with supervisory responsibilities over campers or the camp ground" and so do not "owe[] any duty to the plaintiffs." Bensoussan Decl. ¶ 9, ECF No. 15.  Defendants also contradict plaintiffs' allegation that J.E. was assigned as B.N.'s counselor, asserting that J.E. was not assigned to B.N.'s bunk until the day after the incident.  *Id.* at ¶¶ 11-13.  On the basis of this petition, defendants urged this Court to dismiss J.E. from the action and to take jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

On December 11, 2012, plaintiffs filed the instant motion, "categorically refut[ing]" many of the defendants' assertions and supplementing the record with additional facts.  *See* Pls.' Notice of Mot. ¶¶ 5, 9, ECF No. 14 (reiterating that "J.E. had already been assigned as

---

[1] I credit defendants' representation that J.E. "assents to the removal of this matter," Defs.' Notice of Removal ¶ 20, ECF No. 1.  *See Chicago, R.I. & P. Ry. v. Martin*, 178 U.S. 245, 248 (1900) ("[I]t [is] well settled that a removal could not be effected unless all the parties on the same side of the controversy united in the petition . . . .")

[2] The parties agree that J.E. and plaintiffs are all citizens of New York.

2

the infant's counselor" and indicating that J.E. was "one of. . . [B.N.'s] bunkmakes."). The infant B.N. also submitted an affidavit in support of plaintiffs' remand motion.

In opposition to the motion, Bensoussan filed a declaration identifying himself as "the president of the board of directors of Bnei Levi" and reiterating that CITs are "never tasked with supervisory responsibility over other campers or the camp grounds." Bensoussan Decl. ¶ 9, ECF No. 15. Bensoussan again disputed the allegations in the complaint, asserting that "J.E. was not assigned to B.N. until the day after B.N.'s accident," and indicated that the "person directly responsible for [B.N.'s] supervision – was Raphael Tchiporut," a 25-year old resident of New Jersey. *Id.* ¶ 10 (emphasis in original). Bensoussan's declaration also elaborated on the camp's hiring structure, stating that all CITs are minors who are also campers that "receive[] a 50% discount off of the fee to attend camp." *Id.* at ¶ 8.

B.    *Governing Law*

Article III of the Constitution authorizes federal court jurisdiction over suits between citizens of different states. The necessary statutory authorization for this jurisdiction is found in 28 U.S.C. § 1332, which provides in relevant part, "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." *Id.* at § 1332(a)(1). If an action is originally filed in state court, a defendant may remove the case to federal court provided the action is one "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a).

Federal courts are courts of limited jurisdiction, and they possess only those powers authorized by the Constitution or statute. Congress granted district courts original jurisdiction in civil actions between citizens of different States. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005). For diversity jurisdiction to exist, however, the parties must be completely diverse – that is, no plaintiff can be a citizen of the same state as any

3

defendant. *See Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998). A case must be remanded to state court, if, at "any time before final judgment[,] it appears that the district court lacks subject matter jurisdiction," 28 U.S.C. § 1447(c).

It is well settled that federal courts are to construe the removal statute strictly, *see Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941), and to afford wide deference to a plaintiff's choice to litigate in a state forum. However, a plaintiff may not defeat diversity jurisdiction by improperly joining a non-diverse defendant with no genuine connection to the matter. *See Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010). This rule, known as the doctrine of fraudulent joinder, permits courts to dismiss parties that are joined without any legitimate connection to the controversy. As the Second Circuit explained:

> The doctrine of fraudulent joinder is meant to prevent plaintiffs from joining non-diverse parties in an effort to defeat federal jurisdiction. Under the doctrine, courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court.

*Id.* (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004)).

A moving party alleging fraudulent joinder "bears a heavy burden," and is obliged to demonstrate, "by clear and convincing evidence," either (1) "that there has been outright fraud committed in the plaintiff's pleadings," or (2) "that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998). Clear and convincing evidence is "a more exacting standard than proof by a preponderance of the evidence, where you need believe only that a party's claim is more likely true than not true." 4 L. Sand et al., Modern Federal Jury Instructions – Civil ¶ 73-3. To satisfy the clear and convincing evidence standard, it is not enough that the thing to be proved is more probable than not. Rather, there must be "evidence indicating that the thing to be proved is highly probable or reasonably certain."

4

*Dongguk Univ. v. Yale Univ.*, 873 F.Supp.2d 460, 466 (D. Conn. 2012) (internal quotation marks omitted).

The procedure for deciding whether there has been fraudulent joinder begins with an examination of the verified removal petition. If unchallenged, the allegations in the petition are accepted as true. Where, as here, the parties vigorously dispute key facts, "the issues so arising must be heard and determined by the District Court." *Wilson v. Republic Iron & Steel*, 257 U.S. 92, 97 (1921). In assessing the facts, the district court is permitted to look beyond the face of the complaint to all affidavits filed by the plaintiffs and defendants in support of their motions. *See Pampillonia*, 138 F.3d at 461-62 (looking to affidavits to determine if plaintiff's complaint alleged a sufficient factual foundation to support claims); *see also Bldg. and Const. Trades Council of Buffalo, N.Y. and Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 150 (2d Cir. 2006) (noting that a court has discretion to look outside the pleadings when determining whether it has subject matter jurisdiction."); *Audi of Smithtown, Inc. v. Volkswagen of America, Inc.*, No. 08 Civ 1773 (JFB), 2009 WL 385541, at * 3 (E.D.N.Y. Feb. 11, 2009) ("In analyzing the fraudulent joinder issue, the court is permitted to look beyond the pleadings"); *Consol. Fen-Phen Cases*, No. 03 Civ 3081 (JG), 2003 WL 22682440, at *3 (E.D.N.Y. Nov. 12, 2003) (same); *Arseneault v. Congoleum Corp.*, No. 01 Civ 10657 (LMM), 2002 WL 472256, at *6-*7 (S.D.N.Y. Mar. 26, 2002) (considering deposition testimony and other material outside pleadings in order to resolve claim of fraudulent joinder).[3]

    C.    *Discussion*

        1.    *Fraudulent Joinder*

---

[3] If a court erroneously finds federal court jurisdiction, this error "does not, by itself, necessitate reversal," as federal courts have a continuing obligation to ensure that they have jurisdiction. *Briarpatch Ltd., L.P.*, 373 F.3d at 301. The critical issue is whether, sometime prior to the entry of final judgment, the district court realizes its error and remands the case to the state court. *Id.*; *see also Brown v. Eli Lilly and Co.*, 654 F.3d 347, 356 (2d Cir. 2011) (noting that a district court's error in failing to remand an improperly removed case was not fatal to the ensuing adjudication where federal jurisdiction existed when judgment was entered) (citing *Caterpillar, Inc. v. Lewis*, 519 U.S. 61 (1996)).

5

Defendants principally raise two arguments in opposition to plaintiffs' motion to remand: (1) plaintiffs' committed fraud by falsely alleging that J.E. was assigned to B.N. at the time of the incident; and (2) plaintiffs cannot state a claim against J.E. because J.E., as a 15-year old minor and a CIT, neither had any supervisory responsibilities nor assumed a duty of care for B.N.'s care. I address each in turn.

a. *Fraud in the Pleadings*

Defendants' removal petition asserts that plaintiffs' complaint falsely alleges that J.E. was assigned to B.N.'s bunk. At oral argument, defendants suggested that Bensoussan's declaration ought to be afforded great weight because he has access to personnel files and, thus, is worthy of belief.[4] When a court is faced with disputes of fact, "all factual and legal ambiguities [must be] resolved in favor of plaintiff," *Briarpatch Ltd., L.P.*, 373 F.3d at 302. Defendants' argument boils down to an exhortation that I credit Bensoussan's declaration in lieu of the allegations in plaintiffs' complaint.[5] However, this declaration is not sufficient to meet their heavy burden of establishing fraudulent joinder by clear and convincing evidence. Having been presented only with competing affirmations and no other evidence to weigh, I find that defendants have not met their burden to show that it is "reasonably certain" that J.E. was not assigned to B.N.'s bunk on the day of the incident. *Dongguk Univ.*, 873 F.Supp.2d at 466. Accordingly, I conclude that defendants have failed to establish that plaintiffs committed fraud in the pleadings.

b. *Legal Basis for the Claim against J.E.*

The parties agree that New York substantive law governs this action. To prove a prima facie case of negligence, a plaintiff must establish the existence of a duty on the defendant's part to the plaintiff, the breach of the duty, and that the breach of the duty was a proximate cause

---

[4] Defendants also suggest that B.N.'s assertions are not credible because they are self-interested. However, even assuming that B.N.'s decision to name J.E. as a defendant was motivated by a desire to avoid federal jurisdiction, proof of this subjective motive is insufficient to establish fraudulent joinder. *See Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183, 189 (1931) ("[T]he motive of a plaintiff in joining defendants is immaterial, provided there is in good faith a cause of action against those joined.").

[5] In support of this remand motion B.N. also submitted an affidavit re-affirming the allegations in his complaint that "J.E. was one of the camp counselors assigned to [his] bunk." Pls.' Ex. C ¶ 2, ECF No. 14.

6

of an injury to the plaintiff. *Gordon v Muchnick*, 180 A.D.2d 715 (N.Y. App. Div. 2d Dep't 1992). It is not possible to state a claim of negligence unless the defendant owed a duty of care. *See Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 584 (1994) ("a duty of reasonable care owed by an alleged tortfeasor to an injured party is elemental to any recovery in negligence"): Thus, defendants attempt to show that J.E. owed no such duty and, therefore, that plaintiffs cannot state a claim against him.

The duty of care owed by persons supervising children in a summer camp setting is that which a reasonably prudent parent would observe under comparable circumstances. *See Douglas v. John Hus Moravian Church of Brooklyn*, 8 A.D.3d 327, 328 (2004). A person who stands *in loco parentis* is one who "fully put himself in the situation of a lawful parent by assuming *all* the obligations incident to the parental relationship and who actually discharges those obligations," and the doctrine requires that the individual intend to assume all these obligations. *Rutkowski v. Wasko*, 286 A.D. 327, 331 (N.Y. App. Div. 3d Dep't 1955) (emphasis in original). While they are not insurers of the safety of persons under their supervision, persons acting *in loco parentis* are charged with the duty of adequately supervising the minors under their care. *Watkins Glen Cent. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 732 N.Y.S.2d 70, 74 (N.Y. App. Div. 2d Dep't 2001).

Defendants fail to cite any New York law holding – or even suggesting – that a fifteen-year-old cannot assume the obligations incidental to the parental relationship. Based on my own research, I also find no case law in New York that precludes minors from assuming *in loco parentis* status. *Cf. Rutkowski*, 286 A.D. at 331 (holding that whether a person stands "*in loco parentis*" is primarily a question of intent to be determined in the light of the circumstances in each case). Construing this ambiguity in New York law in favor of plaintiffs, as I must, I find that the defendants have failed to establish that J.E. is not amenable to suit as a matter of law.

Defendants also make the factual argument that J.E. had no duty to B.N. because CITs are "never tasked with supervisory responsibility over other campers or the camp grounds," Bensoussan Decl. ¶ 9, ECF No. 15.  For the reasons discussed above, defendants' assertions contradicting the allegations in the complaint merely create a question of fact and do not rise to the level of clear and convincing evidence of fraudulent joinder.  Construing the facts in plaintiffs' favor, as I must, I conclude that defendants have failed to establish that there is no reasonable possibility that J.E. was tasked with supervisory responsibility over B.N. [6]

2. *Attorney's Fees*

Plaintiffs seek attorney's fees for the cost of defending this removal motion.  "[A]bsent unusual circumstances," courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  *Martin v. Franklin Capital Corp*., 546 U.S. 132, 136 (2005).  Though defendants' removal petition proved unsuccessful, I find that they had an objectively reasonable basis to seek removal.   Presenting no other "unusual circumstances" that would counsel in favor of awarding fees, I deny plaintiffs' motion to the extent it seeks fees.

D. *Conclusion*

Defendants have failed to meet their heavy burden to establish fraudulent joinder.  Since the presence of J.E. as a defendant in this suit precludes diversity jurisdiction, plaintiffs' motion to remand is granted.

So ordered.

_____
John Gleeson, U.S.D.J.

Dated: January 15, 2013
       Brooklyn, New York

---

[6] The parties disagree about the proper interpretation of the Second Circuit's "no possibility" standard, with defendants urging this Court to adopt the more forgiving standard laid out in *In re Rezulin Prods. Liab. Litig*., 133 F.Supp.2d 272 (S.D.N.Y. 2001), which interpreted the "no possibility" standard of *Pampillonia* to mean "no reasonable basis."  *See* Opp. to Remand 9, ECF No. 15.  I need not decide this question, as I find that under either interpretation, defendants fail to meet their burden.